**EXHIBIT 1**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re United States Patent of: | § |
| Patentee:   LALONDE, John D. et al. | § Serial No.:   08/430,111 |
| U.S. Patent No.: 6,240,328 | § Date Filed:   April 27, 1995 |
| Title:   MANUFACTURING METHOD FOR ASSEMBLING PRODUCTS BY GENERATING AND SCHEDULING DYNAMICALLY ASSEMBLY INSTRUCTIONS | § Date Issued: May 29, 2001 |

**URGENT PETITION TO DIRECTOR UNDER RULE 181(a)(3) OR 182 TO VACATE THE ORDER GRANTING THE PETITION TO ACCEPT UNINTENTIONALLY DELAYED PAYMENT OF MAINTENACE FEE FOR U.S. PATENT NO. 6,240,328 BECAUSE THE PATENT WAS INTENTIONALLY ABANDONED, AND PETITION UNDER RULE 183 TO SUSPEND ANY RULES PREVENTING CONSIDERATION OF DELL'S PETITION**

Mail Stop Petition
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Dell Inc. ("Dell") files this urgent Petition, presenting the true facts as provided in documents and depositions under oath, that U.S. Patent No. 6,240,328 ("the '328 patent") was intentionally and deliberately abandoned by Motorola and was therefore later improperly revived by Abstrax, Inc. Dell's Petition is specifically filed pursuant to 37 CFR § 1.182 seeking a ruling by the Director on an issue not otherwise provided for in the regulations. In the alternative, Dell's Petition is filed under 37 CFR § 1.181(a)(3) as one concerning an issue to be determined by the Director. To the extent the PTO believes any rules, such as 37 CFR 1.33 and 1.181(f), prevent consideration of Dell's Petition, Dell further petitions the Director to suspend such rules

1

under the power granted to the Director by 37 CFR 1.183. In support of its petition, Dell relies on the Declaration of the Honorable Gerald Mossinghoff, former Commissioner for the Patent and Trademark Office (Ex. A).

### Basis for Dell's Petition

Dell's Petition pertains to the improper revival of the '328 patent, which Abstrax, Inc. ("Abstrax") has asserted against Dell in an infringement case scheduled for trial in October 2009. *See Abstrax, Inc. v. Dell Inc.*, Case No. 2:07-CV-221 (E.D. Tex.). The maintenance fee on the '328 patent was due no later than May 31, 2005, at which time the '328 patent was wholly owned by Motorola. Motorola never paid this maintenance fee, instead deliberately choosing to let the '328 patent expire. Motorola's own internal documents clearly demonstrate that this decision to let the patent lapse was intentional. *See* Ex. B (Internal Motorola e-mail dated May 11, 2004); Ex. C (Decl. of Motorola's Senior Litigation Counsel, Thomas V. Miller).

On August 1, 2006, two months after intentionally letting the '328 patent lapse, Motorola nevertheless assigned to Abstrax its rights in various "Intellectual Property" related to two software programs that ostensibly practiced the '328 patent. Ex. D (Amendment No. 2 to Technology Rights Agreement) (converting previous license into an assignment); *see also* Ex. E (Original Technology Rights Agreement). This assignment did not expressly identify the '328 patent. *See* Exs. F (PTO Assignment Records for '328 patent) & G (Agreement Between Motorola and Abstrax, dated May 30, 2007).

On November 17, 2006, while Motorola was still the owner of record, Abstrax filed a Petition to Accept Unintentionally Delayed Payment of Maintenance Fee ("the Abstrax Petition") for the '328 patent (Paper No. 24). Ex. H. Motorola did not participate in this filing in any way. The Abstrax Petition did not mention Motorola's decision to intentionally abandon the

2

'328 patent, but instead summarily stated that the maintenance fee payment was "unintentionally delayed." Ex. H. Having never been informed of Motorola's decision to intentionally let the '328 patent lapse, the PTO granted the Abstrax Petition on February 5, 2007 (Paper No. 25). Ex. I. The improperly revived '328 patent was subsequently assigned to Abstrax on May 30, 2007. Exs. F & G.

Abstrax is now using the improperly revived '328 patent to sue Dell for infringement, and seeks approximately $650,000,000 in damages for actions that occurred largely *after* the '328 patent lapsed. Although the '328 patent forms the entire basis of Abstrax's suit, Dell is foreclosed from asserting the defense of "improper revival" in the district court infringement action. *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 543 F.3d 657, 663 (Fed. Cir. 2008) ("[W]e hold that improper revival may not be asserted as a defense in an action involving the validity or infringement of a patent."). Rather, Dell's only recourse is to file the instant petition asking the PTO to reconsider its decision to grant the Abstrax Petition or, if the PTO refuses to reconsider its decision, to take action against the PTO under the Administrative Procedures Act.

Dell thus petitions the Director to reconsider the PTO's acceptance of the late maintenance fee payment pursuant to 37 C.F.R. §1.182 because Dell's Petition is filed to address a situation "not specifically provided for in the regulations" and because the PTO has the inherent authority to reconsider its prior decisions. *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360 (Fed. Cir. 2008) ("Courts have uniformly concluded that administrative agencies possess inherent authority to reconsider their decisions."); *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) ("[I]t is generally accepted that in the absence of a specific statutory limitation, an administrative agency has the inherent authority to reconsider its decisions.").

3

The PTO's authority to reconsider its prior decisions is even greater where, as here, it is to protect the integrity of PTO rulings from a petitioner's false statements or failure to inform the PTO of information material to a proper ruling on the petition. *See Tokyo Kikai Seisakusho*, 529 F.3d at 1361 ("An agency's power to reconsider is even more fundamental when . . . it is exercised to protect the integrity of its own proceedings from fraud."); *see also Elkem Metals, Com. v. United States*, 193 F. Supp 1314, 1321 (Ct. Int'l Trade 2002) ("A finding that the ITC has authority to reconsider a final determination is particularly appropriate where after-discovered fraud is alleged.").

Moreover, the PTO has previously vacated a decision granting a petition to reinstate a patent that had lapsed for failure to pay a maintenance fee when confronted with contradictory evidence. *In re Patent No. 5,665,388* (May 12, 2005). In fact, the Office of Petitions mailed a show cause order based on a "communication filed September 25, 2003, which raised a question as to whether the delay herein was unintentional." *Id.* at 1. Because the trustee of the bankruptcy estate assets, a part of which was the '388 patent, was unable to prove that non-payment of the maintenance fee was unintentional, the previous grant of the bankruptcy estate's petition was ultimately vacated. *Id.* Dell's Petition presents similar circumstances that justify vacating the grant of the Abstrax Petition in light of the evidence submitted herewith.

As previously noted, Dell has no other recourse than to seek the PTO's correction of its error in reviving the '328 patent, except by petition or a lawsuit against the Director under the APA. Given the pending lawsuit against Dell based on the '328 patent, Dell clearly has standing to file this Petition or bring an APA action, if needed. Given the very clear facts in this matter and the affirmative misrepresentations made by Abstrax, the PTO should exercise its inherent authority to resolve this matter.

4

## Factual Background

At the request of Abstrax, Mr. W. Jackson Matney, Jr. (Registration No. 39,292), filed the Abstrax Petition under 37 CFR 1.378(c) on November 17, 2006. In filing the Abstrax Petition, Mr. Matney did not inform the PTO that he was representing Abstrax rather than Motorola, the latter of which was the actual owner of the '328 patent. Moreover, Mr. Matney further misrepresented the true facts to the PTO by including the following statement in the Abstrax Petition: "The delay in payment of the maintenance fee to this patent was unintentional." Ex. H. The Abstrax Petition was granted by the PTO on February 5, 2007, a decision made without the benefit of contrary material facts in the possession of Motorola, which was the current and sole registered owner of the '328 patent. Ex. I. Indeed, as Motorola's own internal documents unequivocally demonstrate, the decision to not pay the maintenance fee for the '328 patent in a timely manner was deliberate and intentional. Exs. B & C.

### A. Intentional Abandonment of the '328 Patent by the Patent Owner, Motorola

The '328 patent issued on May 29, 2001. At the time the application that led to the '328 patent was filed, the three named inventors had each assigned all rights in the '328 patent application to Motorola. Ex. J. The 3½ year maintenance fee ("the Maintenance Fee") for the '328 patent was due during the period from June 1, 2004 through November 29, 2004, and in any event no later than the conclusion of the surcharge period on May 31, 2005.[1] 37 CFR § 1.362(d)-(f). Motorola was the sole owner of the '328 patent at all relevant times during which the Maintenance Fee was due and owing.

On May 11, 2004, an attorney in Motorola's Law Department sent an e-mail to Jeffrey Harris, the responsible person in Motorola's computer group ("MCG"), requesting that he make the decision whether to "pay" the annuity (maintenance fee) for or "drop" various patents,

---

[1] May 29, 2005 was a Sunday and May 30, 2005 was Memorial Day.

specifically including the '328 patent. Ex. B. On May 13, 2004, Mr. Harris responded to this e-mail with the annuity decision for the '328 patent. Ex. B. On the "annuity decision report," Mr. Harris affirmatively checked the box "drop" for the '328 patent indicating that *the maintenance fee for the '328 patent should not be paid*. Ex. B, at 3. As a result of Mr. Harris's decision, *Motorola intentionally did not pay the maintenance fee for the '328 patent*. See Ex. K (Abstrax's Response to Dell's First Req. for Admis. No. 16) (admitting that "Motorola did not pay the Maintenance Fee for the '328 patent"). Because Motorola did not make the Maintenance Fee payment, the '328 patent expired at midnight on May 29, 2005. 37 CFR § 1.362(g) ("A patent which expires for the failure to pay the maintenance fee will expire at the end of the same date (anniversary date) the patent was granted in the 4th, 8th, or 12th year after grant.").

**B.    Abstrax's Misplaced and Improper Request to Revive the '328 Patent**

In August 2006 – more than a year after the patent expired – Motorola assigned to Abstrax two software programs that were developed at Motorola by the named inventors, as well as related intellectual property. Ex. D. The functionality of these software programs ostensibly formed Motorola's basis for filing the application that matured into the '328 patent. Notably, however, Motorola did not assign the '328 patent to Abstrax at this time. *See* Exs. F & G.

On November 17, 2006, almost a year and a half after the '328 patent had expired, Abstrax became aware that the Maintenance Fee had not been paid. Ex. L (Abstrax's Supplemental Resp. to Dell's Interrog. No. 3) at p. 4 ("Abstrax first became aware that the 3½ year maintenance fee had not been paid on November 17, 2006."). Abstrax immediately retained the services of Mr. Matney, who filed the Abstrax Petition on its behalf that very same day. Ex. H. Notably, Mr. Matney never informed the PTO that he was filing the Abstrax Petition on behalf of someone other than the true owner of record, which at the time was still Motorola. *See*

Ex. H. In fact, there is no evidence Mr. Matney even contacted Motorola before filing the Abstrax Petition. Ex. Q (Matney Dep., June 12, 2008) at 23:21-24:3 ("Q. Before filing the petition, did you talk to anyone at Motorola? A. I don't recall. ... I might have, but I just don't remember one way or the other."). Moreover, Mr. Matney, along with a Ms. Wardwell, only spent a total of 1.5 hours researching, preparing and filing the Abstrax Petition. *See* Ex. M (Baker & McKenzie Invoice for work performed on Nov. 17, 2006).

To induce Mr. Matney to file the Abstrax Petition, Abstrax falsely represented that Motorola's non-payment of the fee was unintentional. Abstrax told Mr. Matney that a Motorola employee, Manuel ("Manny") G. Martinez, told Abstrax's Chief Technical Officer and named inventor on the '328 patent, John LaLonde, that the Maintenance Fee had not been paid due to a "mistake." Ex. L (Abstrax's Supplemental Resp. to Dell's Interrog. No. 3) at p. 5. Contrary to Abstrax's assertion, however, Mr. Martinez testified under oath that he did not tell Mr. LaLonde that Motorola's nonpayment was a mistake, and that he had in fact never even heard of a patent maintenance fee. Ex. N (Martinez Dep., Aug. 20, 2008) at 2013:5-33, 2015:11-2016:9. Instead, he advised Mr. LaLonde that he should talk to someone in Motorola's legal department, yet Abstrax did not contact Motorola's legal department prior to filing the Abstrax Petition. *Id.*, 2015:11-47; Ex. K (Req. for Admis. No. 21) at p. 8 (admitting that prior to filing the Abstrax Petition, "Manny Martinez was the only employee of Motorola contacted by Abstrax regarding Motorola's failure to timely pay the Maintenance Fee."). Furthermore, Mr. Martinez testified that, during his time at Motorola, he had never been involved in the payment of maintenance fees. *Id.*, 2012:45-2013:11; *see also* Ex. K (Req. for Admis. No. 19) at p. 7 (admitting that Abstrax "is not aware of any evidence it has that Motorola consulted with Manny Martinez regarding the payment of the Maintenance Fee for the '328 patent").

The Abstrax Petition did not specifically identify any statements as "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Ex. A (Mossinghoff Decl.) at ¶¶ 23, 24; *see also* Ex. H. Rather, the Abstrax Petition summarily averred that the "delay in payment of the maintenance fee to this patent was unintentional." Ex. H. Notwithstanding this statement, there is no evidence that Mr. Matney conducted any investigation into the facts surrounding Motorola's decision not to pay the Maintenance Fee. Ex. A, at ¶ 23; Ex. H, at 4. Apparently in reliance on Mr. Matney's representations and his duties under § 10.18, the Abstrax Petition was granted on February 5, 2007. Ex. A at ¶ 18, 19, 23 and 24.

## C. Motorola Assigns the '328 Patent to Abstrax, Which Then Uses it to Sue Dell

Motorola did not assign the '328 patent to Abstrax until May 30, 2007 – more than a full month *after* the PTO granted the Abstrax Petition that was filed on behalf of Abstrax. *Compare* Ex. G (May 30, 2007 Assignment), *with* Ex. I (PTO decision granting Abstrax Petition on February 5, 2007). Two days later, on June 1, 2007, Abstrax sued Dell Inc. and Gateway, Inc. for infringement of the '328 patent, seeking approximately $650,000,000 in damages and a permanent injunction against Dell. Ex. O (Abstrax's Original Compl. for Patent Infringement). That case is scheduled for trial in the Eastern District of Texas in October 2009.

## Discussion

### A. Motorola Intentionally Permitted the '328 Patent to Lapse.

The proper inquiry under 35 U.S.C. § 41(c)(1) and 37 CFR § 1.378(c) is whether Motorola, which was the registered owner of the '328 patent, intended to pay the Maintenance Fee for the '328 patent prior to the patent's expiration. Where, as here, the actual patent owner intentionally and deliberately decided not to pay the maintenance fee, it is irrelevant why that decision was made. *See* MPEP 711.03(c)II(C)(1) ("These matters simply confuse the question of whether there was a deliberate decision . . . with why there was a deliberate decision."). Moreover, there are no facts that contradict Motorola's decision not to pay the Maintenance Fee for the '328 patent. *See, e.g.*, Exs. B (Internal Motorola e-mail) & C (Decl. of Motorola's Senior Litigation Counsel, Thomas V. Miller).

Throughout the pending litigation referenced above, Abstrax has argued without any evidence that Motorola's decision not to pay the Maintenance Fee was a "mistake." *See, e.g.*, Ex. L (Abstrax's Supplemental Response to Dell's Interrogatory No. 3) at p. 4. However, the PTO has previously held that good-faith errors do not affect the intentionality of a decision. *See In re Patent No. 5,181,974*, p. 5 (Aug. 17, 2007) ("Such intentional action or inaction precludes a finding of unintentional delay, even if the agent-representative made his decision not to timely take the necessary action in a good faith error."); *In re Patent No. 4,496,886*, p. 5 (July 6, 1998) (identical quotation). Even if Motorola made a mistake when it intentionally let the '328 patent lapse for nonpayment, that does not make the course of action decided any less intentional within the meaning of 37 CFR § 1.378(c). *See In re Maldague*, 10 USPQ2d 1477, 1478 (Comm'r Pat. 1988) ("An intentional act is not rendered unintentional when an applicant reviewing the same facts changes his mind as to the appropriate course of action to pursue.").

9

### B. Abstrax's Intent Regarding Non-Payment of the Maintenance Fee is Irrelevant

Motorola, as legal title holder, was the party responsible for payment of maintenance fees for the '328 patent when they were due on May 31, 2005. Abstrax did not become an assignee of the '328 patent until almost two full years after the Maintenance Fee was due, so its intent regarding such payment is irrelevant. *See* Ex. F ('328 Patent Assignment Records); *see also Burandt*, 528 F.3d at 1334 ("The Director is entitled to rely on the record and does not have to conduct an equitable analysis in order to determine who must pay the maintenance fee."). In determining whether a delay is intentional, the PTO must look to the rights of the parties at the time of expiration of the patent. *See Burandt v. Dudas*, 528 F.3d 1329, 1331 (Fed. Cir. 2008) ("[O]ne must look to the actions of the party responsible for payment of the maintenance fees to determine whether a delay in payment was unavoidable."); *Kim v. Quigg*, 718 F. Supp. 1280, 1284 (E.D. Va. 1989) ("However, for purposes of reviving an application due to unavoidable delay, the focus must be on the rights of the parties as of the time of abandonment."). The legal title holder is the party responsible for payment of maintenance fees. *Burandt*, 528 F.3d at 1333 ("Here, IRI, as the legal title holder of the patent, was the party responsible for paying the maintenance fee."); *Ray v. Lehman*, 55 F.3d 606, 609 (Fed. Cir. 1995); *Quigg*, 718 F. Supp. at 1284. Consequently, Motorola's own decision to intentionally let the '328 patent lapse would have been the dispositive fact when the PTO was considering the Abstrax Petition filed by Abstrax in November 2006. Because the PTO was unaware of Motorola's intentional nonpayment of the '328 patent's maintenance fee, which was a direct result of Abstrax's affirmative misrepresentations, it improperly granted the Abstrax Petition even though the '328 patent had intentionally been permitted to lapse. The revival of the '328 patent, based on the grant of the Abstrax Petition, was *ultra vires*, as PTO does not have the authority to revive an intentionally abandoned patent. *See* 35 U.S.C. § 41(c)(1).

## Conclusion

As demonstrated above, Motorola owned the '328 patent on May 31, 2005 and made the deliberate decision not to pay the Maintenance Fee. As a result of Motorola's intentional decision, the '328 patent expired on May 29, 2005. Ex. F (PTO Assignment Records); Ex. P ('328 Patent Payment Windows). Therefore, the failure to pay the maintenance fee for the '328 patent was not unintentional, and Mr. Matney's representation to the contrary in the Abstrax Petition was false. *Compare* Ex. H (Abstrax Petition), *with* Exs. B (Internal Motorola email regarding maintenance fees), *and* C (Decl. of Motorola's Senior Litigation Counsel, Thomas V. Miller). Accordingly, Dell respectfully requests that the PTO's Office of Petitions: (i) suspend any rules standing in the way of its consideration of Dell's Petition; (ii) reconsider its February 5, 2007 decision granting the Abstrax Petition; and (iii) upon reconsideration, deny the Abstrax Petition.

Date: March 18, 2009

K&L Gates LLP
111 Congress Ave., Suite 900
Austin, Texas 78701
Tel. (512) 482-6880
Fax (512) 482-6859

Vinson & Elkins L.L.P.
2801 Via Fortuna, Suite 100
Austin, Texas 78746-7568
Tel. (512) 542-8400
Fax (512) 542-8612

Respectfully submitted,

/s/ Roderick B. Williams

Roderick B. Williams
Reg. No. 53,775

David Weaver
Reg. No. 43,244

Kristen Foster
Reg. No. 52,092

R. Floyd Walker
Reg. No. 55,707

**Attorneys for Dell Inc.**

cc: Counsel for Plaintiff Abstrax in *Abstrax, Inc. v. Dell Inc.*, Case No. 2:07-CV-221 (E.D. Tex.)

Counsel for Defendant Sun in *Abstrax, Inc. v. Sun Microsystems, Inc.*, Case No. 2:07-CV-333 (E.D. Tex.)

W. Jackson Matney, Jr.
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004-2541
202/739-5759

Raymond Chen
Solicitor of Patents and Trademarks

## Authorization to Charge Fees

The Director is authorized to charge the $800 fee to Deposit Account No. 22-0365/DEL450/10035. Furthermore, if any additional fees are required, the Director is authorized to charge such fees (or to credit any overpayment) to the above deposit account.

## List of Exhibits

A. Declaration of Gerald J. Mossinghoff, dated March 10, 2009

B. E-mail from Jeffery Harris to Winnie Radtke regarding 4Q 2004 Annuity and Foreign Filing Decisions, dated May 13, 2004

C. Declaration of Thomas V. Miller, Senior Litigation Counsel at Motorola, Inc., dated June 19, 2008

D. Amendment No. 2 to Technology Rights Agreement, dated August 1, 2006

E. Technology Rights Agreement and Amendment 1, dated April 29, 1995

F. PTO Assignment Records for the '328 Patent, as of February 3, 2009

G. Agreement between Motorola, Inc. and Abstrax Inc., dated May 30, 2007

H. Abstrax's Petition to Accept Unintentionally Delayed Maintenance Fee, dated November 17, 2006

I. Decision Granting Petition to Accept Unintentionally Delayed Maintenance Fee, dated February 5, 2007

J. Assignment from Named Inventors to Motorola, Inc.

K. Abstrax's Response to Dell's First Request for Admissions, dated October 15, 2008

L. Abstrax's Supplemental Response to Interrogatory No. 3, dated August 29, 2008

M. Baker & McKenzie November 2006 Invoice to Abstrax Inc., dated December 8, 2006

N. Manuel ("Manny") G. Martinez Deposition, August 20, 2008

O. Abstrax's Original Complaint for Patent Infringement, dated July 1, 2007

P. '328 Patent Payment Windows

Q. W. Jackson Matney, Jr. Deposition, June 12, 2008